SOMMERVTLLE, J.
Plaintiff, a timber broker, alleges that she entered into a verbal contract with defendant as broker to sell some 12,000 acres of land which belonged to him in Livingston parish; that defendant has sold said land to Mr. L. 'S. Berg, to whom she had offered said land; and that defendant was indebted to her in the sum of $5,-807.28, with interest, as commissions on said sale.
Defendant’s answer is a general denial.
There was judgment in favor of defendant, and plaintiff appeals.
Plaintiff sought, and obtained, written authorization from defendant to sell 12,000 acres of timber land belonging to him in Livingston parish on two separate occasions during the year 1905; first, at $9 per acre, and in the second authorization at $9.50 per acre. Both contracts expired, according to the terms thereof, within 30 days after their respective dates. Under the first, plaintiff was to receive 5 per cent., and under the second, 2% per cent., commission for selling said land. Subsequently, in March, 1906, defendant gave to plaintiff under a verbal contract the right to sell said land, with a commission of 3 per cent. Plaintiff earnestly endeavored to sell the land, but failed. She interested Mr. L. S. Berg, who owned property. in the neighborhood of defendant’s land, and he sent an estimator upon the land; and the report of the estimator caused Mr. Berg to give up the idea of purchasing. This was in March or April, 1906. In February, 1907, Mr. Berg sent for plaintiff, and said that he had decided to take up the matter of the Manson land again, and wanted a copy of the estimate of the timber thereon made for defendant, as he proposed to send a cruiser to verify the estimate made by defendant’s estimator. Plaintiff saw defendant with reference to this matter again, but he told her that he could not negotiate with her customer, as he was negotiating with two other parties, giving their names; but, if they did not buy, that he would let the party whom she might represent have the land at $11 per *820 acre. Plaintiff further testifies that in June, 1907, defendant sold the land in question to Mr. Berg at $15 per acre; and that she made a demand upon defendant for 3 per cent, commission on the amount of the sale.
Defendant admits that plaintiff called upon him in February, 1907, with reference to the sale of his land, but that she did not mention Mr. Berg’s name, and that he told her, as testified to by her, that he was negotiating with other parties, and that he could not deal with her at that time; he is very positive that he did not then authorize plaintiff to offer his land for sale. I-Ie gives the names of several parties with whom he had negotiations at that time and afterwards, and produced an agreement to sell over 13,-000 acres and a sawmill to M. W. McLeod, O. B. Johnson, and E. A. Frost, of date March 30, 1907, for $16.50 per acre, all of which negotiations fell through. He further testifies that he subsequently, May 21, 1907, agreed to sell his land, aggregating some 13,000 acres, without the sawmill, to the Eastern Land & Lumber Company, Limited, represented by L. S. Berg, agent, which company on the same day transferred said agreement to sell to McLeod, Johnson, and Frost, before named; and on July 5, 1907, defendant transferred title to said land to M. W. McLeod, Clarence B. Johnson, and Edward A. Frost.
It appears from the evidence that plaintiff, while acting under verbal authority from defendant in March, April, and May, 1906, failed to sell to L. 'S. Berg as she had hoped to do, and that she did not communicate the fact to the defendant that she was trying to sell to Mr. Berg, and that subsequently, July 30, 1906, the Eastern Land & Lumber Company, Limited, was formed, and that L. S. Berg became the agent thereof. There is no evidence going to show that plaintiff negotiated with Mr. Berg as the agent of the Eastern Land & Lumber Company, unless it was in the early part of 1907 when Mr. Berg sent for plaintiff, and asked her about the land of defendant; but the latter, at that time, declined to permit plaintiff to represent him in the sale of said land, for the reason that other persons had options thereon. She did not afterwards see defendant with reference to the sale of said land.
Mr. Berg was not an organizer of the Eastern Land & Lumber Company, Limited; it does not appear that he had any stock therein; and he was not an officer thereof. J-Ie may have sold some of his own land to said company. I-Ie was the agent of that company in securing the option from defendant in favor of that company. In thus acting he appears to have proceeded on the suggestion of Frost, Johnson and McLeod in getting the lands of defendant and others into and within the control of the Eastern Land & Lumber Company, Limited, and to thus effect the purchase of a large body of land in the immediate neighborhood to them, Frost, Johnson and McLeod.
It is shown that immediately upon defendant signing an agreement to sell to the Eastern Land & Lumber Company, Limited, that said company on the same day transferred said agreement to Frost, Johnson, and McLeod. The latter were the real purchasers ; and plaintiff had nothing to do with the sale of defendant’s land to them. She was not even instrumental in bringing L. S. Berg, the agent of the Eastern Land & Lumber Company, Limited, to defendant, or in assisting said company in securing any land necessary to make the sale to Frost, Johnson, and McLeod. She admits that she did not know the last-named persons, who were the real purchasers from defendant. At the time plaintiff dealt with Berg he was apparently intending to purchase for himself, and certainly not for the Eastern Land & Lumber Company, Limited, before it was or *822 ganized, or for Frost, Johnson, and McLeod, none of whom she knew, and two of whom ■do not live in this state.
[1, 2] Plaintiff was clearly not the procuring cause of the sale of defendant’s property ; and therefore she is not entitled to any .commission as broker. The sale to the East-ern Land & Lumber Company, Limited, ■through its agent, Berg, included property, ,-some of which plaintiff never had authority to sell at any time; and the price obtained from the purchaser was 50 per cent, larger than that which plaintiff unsuccessfully offered the 12,000 acres; and the sale was made a whole year after plaintiff’s connection with the matter had terminated, and to a corporation which was not in existence until after her connection with the matter had ceased. Taylor v. Martin, 109 La. 137, 33 South. 112; Taylor v. Jay, 119 La. 163, 43 South. 993; Junk v. Golden Ranch Co., 122 La. 794, 48 South. 267; 4 Am. & Eng. Ency. & Law, pp. 978, 979.
Judgment affirmed.