LEO FELLMAN, Appellant, v. EUGENE E. ECUYER, ET AL.

(June 22, 1925, Opinion and Decree)

---

(*Syllabus by the Court.*)

1. Louisiana Digest—Brokers—Par. 17.

A real estate agent is not entitled to a commission upon a lease confected by an owner dealing directly with the lessee, though the lessee was originally solicited by the agent and introduced by the agent to the owner, where it appears that the owner did not interfere with the agent in his effort to consummate the lease, and the agent voluntarily abandoned negotiations and left the city on his vacation.

Appeal from Civil District Court, Hon. Hugh C. Cage, Judge.

This is a suit by a real estate broker for a commission or brokerage based upon a lease executed by defendant.

Judgment for defendant and plaintiff has appealed.

Judgment affirmed.

Hall, Monroe & Lemann, Walter J. Suthon, Jr., attorneys for plaintiff and appellant.

Felix J. Puig, attorney for defendant and appellee.

WESTERFIELD, J. This is a suit by a real estate broker for a commission or brokerage based upon a lease executed by defendant. Defendant denies all liability. There was judgment for defendant and plaintiff has appealed.

The facts as they appear to us are as follows:

Chas. H. Rosenberg, at the time employed by plaintiff some time in July, 1919, learned through accident that the property owned by defendant known as 140 Carondelet street would be vacant as of October, 1919. Rosenberg also knew that W. E. Seebold, an engraver and dealer in stationery, contemplated moving his business establishment and sought to interest Seebold in the rental of defendant's property. He called upon the father of the present defendants, the then owner of the property, and obtained permission to offer the property to Seebold upon the basis of a monthly rental of $450.00. Defendants' father died during the negotiations and Rosenberg continued the negotiations with his son, one of the defendants herein. He arranged a meeting with Ecuyer, Seebold and himself after the death of Ecuyer, Sr., and endeavored to consummate the lease without success. Seebold, who had been paying $275 per month, was unwilling to pay $450, and Ecuyer would make no concession. Rosenberg then endeavored to interest Seebold in other properties which he thought suitable for Seebold's business and Seebold, himself, sought another location at a more moderate rental. While matters were in this state Rosenberg leaves the city on a vacation and is absent about three weeks. Upon his return he discovers that Seebold has rented the Ecuyer property and upon the basis of $450.00 per month as originally offered. Rosenberg reports the situation to his employer and demand is made for a commission, which is refused.

Rosenberg had no express authority to represent Ecuyer, but Ecuyer's acceptance of his volunteered services implies an obligation to pay his compensation and he is liable if Rosenberg's connection with the transaction would otherwise entitle him to a commission. Harvey vs. Winters, 8723 Orl. App. (1 La. App. 383.)

Seebold testifying as a witness for plaintiff says that Rosenberg's effort to interest him in the property completely failed because of the rental demanded, and that he had abandoned the idea of getting the Ecuyer property and was actively engaged in seeking another location, and that Rosenberg was endeavoring to assist him; that he happened to enter the Ecuyer building for the purpose of transacting some business with a Mr. Robbert, an optician, and at that time a tenant of the second floor of the Ecuyer building; that he mentioned to Robbert his desire to and difficulty in getting located and referred to the rental demanded by Ecuyer as being too high; that Robbert suggested his (Seebold's) going to see Ecuyer himself and trying to have the rent reduced; that he (Seebold) accepted the suggestion and called upon Ecuyer, and finding it impossible to induce Ecuyer to reduce the rent, he closed the deal upon Ecuyer's terms conditioned upon certain repairs being made. Counsel insists that Seebold is mistaken and that he is not bound by his testimony under the rule that a party cannot impeach his own witness, citing 28 R. C. L. 643. It is also argued that Rosenberg's testimony to the contrary being affirmative is entitled to more weight than Seebold's negative evidence. But Seebold is without interest in this suit and we see no reason why he

should not fairly state the facts. All parol evidence·is subject to qualification due to human imperfections, but where the evidence of one witness is subject only to such qualification as his capacity for accurate recollection presents and that of another is affected by his interest in the subject matter plus the normal infirmities of memory, it is but a recognition of human characteristics to say that the testimony of the former is more to be relied upon than the latter, and this is true whether the one or the other testify affirmatively or negatively. We therefore accept Mr. Seebold's testimony at its face value.

Counsel cites the early case, Gottschalk vs. Jennings, 1 La. Ann. 5. In that case as in this the broker first introduced the purchaser and the purchaser, in that case as in this, testified that he considered negotiations abandoned and the deal off, though subsequently revived and consummated for a consideration considerably less. The broker was allowed his commission upon the price for which the property was finally sold by another agent after the owner had taken the property out of Gottschalk's hands.

In Barker vs. Jung, 13 Orl. App. 280, this court allowed plaintiff a commission under circumstances somewhat similar to those obtaining in the instant case. The case of Gottschalk vs. Jennings (supra) is cited among other authorities. In that case the court said: "It is true· that at the expiration of several days the brokers failed to secure Cotton as a buyer. But when they failed Jung took up the cue and consummated the sale with the purchaser." In the cited case of J. R. Grand Agency vs. Storing, 156 La. 1096, 101 South. 723, the.agent sent the prospective purchaser to the owner for the purpose of having the owner close the sale and requested the owner to protect him in his commission. The court allowed the commission, saying:

"It is generally held that the right of a real estate broker to his commission is not affected by a sale of the property by the owner himself at a less price than that for which he had authorized the broker to sell. Where he interfered and made such sale to the broker's customer, pending negotiations which to·his knowledge had been begun with the purchaser by the broker, thus preventing the broker from completing the sale."

In the instant case the agent was not deprived of an opportunity to complete the work he had begun by the owner taking the property out of his hands nor was the purchaser sent to the owner to complete the deal. The owner's relation to the negotiations was entirely passive. He recognized his obligation to pay plaintiff his commission if he succeeded and awaited developments. Seebold gave up the idea of renting the property and apparently Rosenberg did also, for he left the city on his vacation without, so far as the record shows, having his employer, plaintiff herein, take up negotiations or assign another employee for that purpose. The mere fact that the lease was ultimately made to Seebold who was first introduced by Rosenberg does not entitle plaintiff to a commission.

In Junk, et al., vs. Golden Ranch Sugar and Cattle Company, 122 La. 794, 48 South. 267, it was held:

"Under the facts of the case, which show that plans for sale arranged with certain persons by plaintiff fell through, and that afterwards one of the persons concerned in the former plan, together with a stranger to it, purchased the property directly from defendant, the verdict of the jury and the judgment rendered thereon are erroneous, and the same are set aside, annulled and reversed, for plaintiffs were not entitled to commission on the final sale."

In Lewis vs. Manson, 132 La. 817, 61 South. 835, it was held:

"Where a broker has had a reasonable time to effect a sale, and he fails to do so, the principal may take negotiations out of his hands and complete them himself; and the fact that the sale was made to a customer represented by the broker, and that the sale was in some degree aided by the previous unsuccessful efforts of the broker, does not give the broker a right to a commission."

In Harvey vs. Winters, No. 8723 Orl. App., a case in which we allowed a commission claimed by a real estate agent, we recently had occasion to review this question and to discuss the jurisprudence.

We conclude that plaintiff was not the procuring cause of the final confection of the lease and that, though he first introduced the lessor, he abandoned his efforts to bring the lessor and lessee together, left the city and his prospect. That the revival of the transaction did not result from plaintiff's original efforts which were not continuous.

For the reasons assigned the judgment appealed from is affirmed.