No. 9023
Orleans

MRS. JAMES WITTENBERG, Appellant
v. MRS. CATHERINE McGRATH,
WIFE OF GEORGE H. DAVIS

---

(October 5, 1925, Opinion and Decree.)
(November 16, 1925, Rehearing Refused.)

---

(*Syllabus by the Court.*)

1. Louisiana Digest—Brokers—Par. 15.

A real estate agent who has failed in an attempt to effect a sale is not entitled to a commission on a sale made without the agent's aid long afterwards by the owner to the person to whom the agent had tried but failed to sell the property.

Appeal from Civil District Court, Hon. Percy Saint, Judge.

This is a suit for a commission for the alleged sale of a house and ground. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

E. A. Parsons, of New Orleans, attorney for plaintiff, appellant.

Dart, Kernan and Dart, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. Plaintiff, a real estate broker, claims a commission.

She alleged the following contract with the defendant:

"383 Walnut Street
"New Orleans, La., March 8th, 1920.

"Mrs. James Wittenberg,
"710 Common Street,
"New Orleans, La.

"Dear Madam:

"Confirming our oral arrangement, I place my residence, 383 Walnut Street, New Orleans, La., exclusively in your hands until June 1st, 1920, to offer for private sale for my account.

"1st The real estate on which the house, garage and tea house are located is bounded by Walnut Street, Esther Street, Audubon Street and a line parallel to Esther Street located 150 feet South from the Esther Street property line;

"2nd It is understood that our minimum price of $85,000.00 cash to the purchaser is based on the unfurnished house, as delivered to us by the builders, including such builtin furniture as is actually a part of the house, but particularly excluding such property as the Hall Clock, Audubon Prints, etc., though attached to the house.

"3rd Your total commission, including costs to me for your services or expenses, is to be three per cent (3%) of the selling price, amounting to $2,550.00 at the minimum selling price of $85,000.00. Payment is to be made to you upon the completion of the sale and upon receipt of this selling price. You are to receive no compensation and you relinquish all claims to any compensation or commission or reimbursement for any expenses if you have not completed the sale before June 1st, 1920.

"4th If I sell the house during the life of this agreement, I will pay you a commission of three per cent (3%) or $2550.00 on a price of $85,000.00 and if I conclude no to sell to a bona fide purchaser · produced by you, I will pay you the said commission.

"5th This agreement is to become effective upon your written acceptance hereon noted, and is to become void on the 1st day of June, 1920.

"Very truly yours,
"(Signed) Katherine M. Davis,
"I approve and authorize the foregoing.
"(Signed) "George H. Davis.
"Accepted: Mrs. James Wittenberg."

The plaintiff alleged that she made every effort to sell the property during the term of the contract, but was unable to do so; that after the expiration of the contract, June 1, 1920, the defendant, verbally employed her to procure a purchaser for the property, without exclusive agency, but with the usual three per cent commission; that on July 11, 1921, plaintiff introduced Edward B. Benjamin to the property and showed him every part of it, and made every effort to induce him to buy the property and so notified the defendant; that plaintiff was later informed that the defendant had agreed to sell the property to Mr. E. B. Benjamin for the price of $60,000.00; that the defendant informed plaintiff that this sale had been conducted by Miss Nicholls; that plaintiff notified the defendant that she had introduced Mr. Benjamin to the property and had used every effort to induce him to purchase it, and that she was entittled to the commission; she claims three per cent on $60,000 or $1800.00.

The defendant admitted signing the written contract mentioned above but alleged that the plaintiff did not procure the purchaser for the property, nor effect a sale within the period of the written contract; she admitted that the plaintiff had notified her that she had sought to interest E. B. Benjamin; she denied that sne had employed plaintiff after the expiration of her contract, but averred that she had advised real estate agents and plaintiff among them that her property was for sale; that on July 12, 1921, the plaintiff wrote that she had visited the property with Mr. Benjamin and that she would do her utmost to sell the property to him; that this was the only time that plaintiff made any reference to Benjamin; that on February 3, 1922, defendant agreed to sell a part of the property to E. B. Benjamin for $51,500; that the negotiations for the sale of the property were conducted by Miss Kitty Nicholls during a few days preceding

February 3rd; that plaintiff had nothing whatever to do with said sale, which had no connection with the efforts of the plaintiff in July preceding; that all negotiations between plaintiff and Benjamin were off when Miss Nicholls undertook the sale; and when she alone induced him to buy the property.

There was judgment for the defendant dismissing plaintiff's demand and she has appealed.

It is admitted that during the life of her contract from March 8, 1920, to June 1, 1920, the plaintiff procured no buyer, not even a prospect. After the expiration of the contract namely on July 11, 1921, plaintiff showed the property to Mr. Benjamin; no sale effected by her with him. On February 3, 1922, more than six months after her negotiations with Benjamin had ended, Miss Nicholls effected a sale of part of the property with the same Benjamin for one-third less than the price fixed in plaintiff's contract.

The sole question in the case is whether the plaintiff procured the purchaser, and whether her efforts in the matter were an element conducive to the sale subsequently made, or whether the negotiations between the plaintiff and Benjamin in July, 1921, were ended when he refused to buy, and whether the sale finally made by Miss Nicholls was the result of new negotiations initiated by her and successfully carried out through her efforts.

The judge of the District Court was of the opinion that the tentative efforts of the plaintiff in July, 1921, had nothing to do with the sale effected by Miss Nicholls in February, 1922, and so are we.

George H. Davis, the defendant's husband testified that in July, 1921, he was in New York and never returned until the trial

of this case; that in that time he never saw the plaintiff and never heard of her until after the sale of the property in February, 1922; that in February, 1922, he received a letter from A. Kains, occupying his house, informing him that Miss Nicholls had interested Mr. Benjamin who offered $45,000.00 for 100 feet of the property; that he answered demanding $51,500.00; that he finally sold 165 feet front for that price and wired his acceptance to Miss Nicholls; he represented his wife; he did not employ Miss Nicholls; she came to him. Plaintiff had no part in the deal, he had not been in touch with her for over six months, he was away in New York from June, 1921, to date.

Mrs. Edward B. Benjamin testified that she was married on October 19, 1921, that her husband had promised her a home as a wedding present; that he had bought a lot and was about to build, the plans were made and bids were out; that Miss Nicholls called them up one day and asked them to look at a house on State Street, they had no serious idea of buying, they went over however and did not like the house and on their way home Miss Nicholls suggested looking at the Davis house; Mr. Benjamin said he had already seen it and had not considered it, but said it was an interesting house, and would like her to see it; so they went there and she liked it very much; they visited it several times and finally bought it. She does not know the plaintiff and never met her, and plaintiff had nothing to do in the purchase by them.

E. B. Benjamin corroborates the testimony of his wife. He says that in June, 1920, the plaintiff showed him the Davis property which he did not care to consider at that time. Later in December, 1921, the plaintiff again asked him if he would not consider the property and he said no, "but very definitely I informed

her I was not going to buy the Davis home".

Miss Katherine E. Nicholls testified:

That she was not acquainted with Mr. and Mrs Benjamin; that she knew they were looking for a house. She tried to interest them in the Pugh house on Palmer Avenue, they did not like it, she persuaded them to visit the Davis house, she knew the price asked was $85,000 but she was informed it could be bought for $51,500; she had Mr. Kains to wire to Mr. Davis, then she communicated with him by wire and finally effected a sale, no one was associated with her in making the sale.

None of that testimony is contradicted by the plaintiff.

In Ford vs. Shaffer, 143 La. 635, 79 South. 172, the court said:

"A broker who has failed in an attempt to effect a sale is not entitled to a commission on a sale made without his aid long afterwards by the principal to the person to whom the broker had tried but failed to sell the property. Quoting Lewis vs. Manson, 132 La. 817, 61 South. 835; McWilliams vs. Soule, No. 8453, Ct. App. and 8734.

"So if the principal and the customer introduced by the broker cannot agree on the terms of a sale, and the broker or his customer drops the negotiations, or the principal withdraws his authorization, the broker is not entitled to a commission on a sale being subsequently made by the principal, acting either independently or through another broker. 9 C. J., p. 602.

"Where an agent fails to get his offer within the terms of his authorization and the purchaser afterwards buys the same piece of property on the same or less terms than those on which the first agent had authority to sell the chain of causation would be broken since the efforts of the first agent would have produced no result and his labors would not be the proximate, legal or procuring cause, and therefore he would not be entitled to any compensation—id note 62 (A)—see also (b).

"The law is undoubtedly well settled that where an agent sets on foot a sale of property which wholly fails, and after such failure, another agent steps in and makes the sale to the parties negotiated with by the first agent, if the first agent has shown his inability to make the sale and even though there is a possibility that the work of the first agent made some impression or had something to do with the sale, yet under such a state of facts, in legal contemplation, the first agent would not effect the sale and consequently would not be entitled to any compensation.—id p. 603 note 67 (a) 204 U. S. 240.

"(b) Thus if a rival broker sells the property at a lower price after the broker first authorized fails to sell it at the price proposed by the principal, no compensation is due to the one first authorized although the sale is made to his customer" id p. 603 (b).

The broker has not a vested interest in any sale that the owner may thereafter make to a man whom he introduced as a prospective purchaser. Ford vs. Shaffer, 143 La. 636, 79 South. 172.

In order to be entitled to a commission the broker must have ultimately been the procuring cause of the sale. Ford vs. Shaffer, 143 La. 636, 79 South. 172; Taylor vs. Jay, 119 La. 163, 43 South. 993; Taylor vs. Martin, 109 La. 137, 33 South. 112; Tessier Dig. p. 31, 15—Nos. 7797, 7901 Ct. App.

"If a broker attemps unsuccessfully to effect a sale of land or his proposed purchaser abandons the idea of buying, but he is afterwards induced to do so by the principal or by another person, without being in any way influenced by the broker, the latter is not entitled to any commission." Junk vs. Golden Ranch Sugar and Cattle Co., 122 La. 794, 48 South. 267; Lewis vs. Manson, 133 La. 817, 61 South. 835; 9 C. J. 608—Note 89.

Judgment affirmed.