CRASTO v. POHLMAN

———

(March 24, 1930. Opinion and Decree.)

———

Gaspar R. Bosseta, of New Orleans, attorney for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant and appellee.

HIGGINS, J. This is a suit by a real estate broker to recover a commission alleged to have been earned under a verbal contract of employment. Defendant denied liability on two grounds:

First. That he did not enter into any agreement with the plaintiff, and

Second. In the alternative, that the real estate broker did not effect the sale of the property.

There was judgment in favor of the defendant dismissing the suit, and plaintiff has appealed.

The record shows that the defendant owned a piece of property which he desired to sell. He placed a for sale sign on the property with a reference to his own phone and address and advertised the property for sale. He refused to sign any contract giving the real estate broker the exclusive right to sell the property. The evidence is conflicting as to whether or not the defendant entered into a contract with the plaintiff, whereby it was agreed that if the plaintiff would sell the property for the sum of $12,000, the defendant would pay a commission of 4 per cent.

Conceding that there was such a contract of employment, let us pass to a consideration of the second defense, i. e., that the plaintiff did not seel the property in question. The evidence in respect to this issue shows that a young man in the employment of the plaintiff spoke to the defendant about listing the property for sale, but that defendant refused to sign a contract giving an exclusive agency to sell the property.

Plaintiff and his witness say that defendant authorized plaintiff to sell the property for $12,000 and agreed to pay him a commission of 4 per cent. Plaintiff advertised the property for sale in the daily papers of the city of New Orleans, and a Mrs. Tomes answered the ad and went with the plaintiff to view the premises. After viewing the premises she appeared impressed, but refused to sign a contract to purchase the property for $12,000, and asked for more time to consider the matter. Plaintiff made several attempts to get in touch with her the following day, but each time he was told that she was out.

In the meantime Mrs. Tomes got in touch with her own real estate broker, Miss Hill, who had been endeavoring to sell Mrs. Tomes some other property which she had listed for sale, but Mrs. Tomes informed Miss Hill that she preferred to buy the property in question. Miss Hill was brought to view the property and undertook to ascertain who was the owner. Miss Hill secured this information from the tenant who occupied the building and went to see the defendant, who told Miss Hill that he wanted to sell the property, but would not pay her any commission on the price that was offered, i. e., $11,500. Miss Hill then placed Mrs. Tomes' check for the sum of $1,200 as a deposit on the property.

The following day plaintiff went to see defendant who showed plaintiff the check and told him that the property had already been sold. Thereupon plaintiff informed defendant that Mrs. Tomes was his client, and that he had brought her to see the property and had secured her as a prospect through his advertising, and that he was entitled to a commission. The plaintiff admits that he did not tell defendant that Mrs. Tomes was his prospect, and that he had showed her the property until after the check was accepted as a deposit. In this regard he testified as follows:

"Q. You did not tell Mr. Pohlman that Mrs. Tomes was a prospect?

"A. No, I told him the following day.

"Q. And at the time you told him that he had told you it was too late and showed you the check?

"A. Yes, sir.

"Q. Between the time that you showed the house to Mrs. Tomes and the time that you talked to Mr. Pohlman, the sale had already been made.

"A. Well, the deposit was up. The sale was not made."

Defendant did not pay Miss Hill any commission, and the evidence shows that the only remuneration that she received was $25, which Mrs. Tomes gave her.

We believe the case of Freeman & Freeman vs. Torre Realty & Improvement Co., 157 La. 1093, 103 So. 334, 336, is directly in point. In that case the plaintiff, a real estate broker, interested a client in renting the defendant's property. While the offer which plaintiff had submitted was under advisement defendant entered into a lease confected through another real estate broker with the same prospective lessee. Plaintiff then brought suit to recover the commission alleged to be due. The contract of employment of the real estate broker was not an exclusive one. There, the court said:

"In the case at bar, defendant desired to lease the building on a basis of 6 per cent of its value, or for $7,800 a year, the tenant to make all repairs and alterations necessary. This information defendant imparted to all of the brokers to whom it spoke concerning the matter, listing the property with no particular one. Its intention was manifestly to pay the commission to whichever broker obtained a tenant upon terms satisfactory to it, and this, we take it, was understood by all of them. Plaintiffs obtained no such offer. The only offers obtained by them imposed upon the owner the obligation of making all repairs and alterations necessary. Under the terms proposed by defendant, it was not called upon to accept those offers, for they were not in accord with the terms proposed by it. Defendant had done nothing to interfere with the leasing of the building by plaintiffs on the terms proposed by it, nor had it interfered in favor of Tessier & Son. Therefore, when Tessier & Son submitted an offer which more nearly approached the terms upon which defendant desired to lease than any other that had been submitted, there was no reason why defendant should not have accepted it, and have paid Tessier & Son, who had obtained the offer, the commission. Because the efforts made by plaintiffs indirectly influenced the bringing of the Metairie Ridge Nursery Company to terms does not entitle plaintiffs to the commission, when, as a matter of fact, the lease was obtained by other brokers. Lewis v. Manson, 132 La. 817, 61 So. 835." See, also, Taylor vs. Martin, 109 La. 137, 33 So. 112; Bullis & Thomas vs. Calvert, 162 La. 378, 110 So. 621.

For the reasons assigned, the judgment appealed from is affirmed.