**GULF COAST MARINE, INC.**

v.

**Albert CHERAMIE, Mary W. Cheramie, Anthony Guilbeau, Norma C. Guilbeau and C & G International, Inc.**

Civ. A. No. 69–353.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 28, 1969.

Thomas B. Wheeler, New Orleans, La., for plaintiff.

Francis Emmett, New Orleans, La., for defendants.

CASSIBRY, District Judge:

Plaintiff, Gulf Coast Marine, Inc., claims a brokerage fee from defendants, C & G International, Inc., Albert Cheramie, Anthony Guilbeau, et al, for the sale of the M/V ANTHONY G and M/V ALBERT C to Establishment Collins International.

FINDINGS OF FACT

1.

Plaintiff and defendants became acquainted in January, 1967 through Lawrence Swildens, a vessel broker in New Orleans. Lawrence Swildens had been authorized by defendants to sell the M/V ANTHONY G and M/V ALBERT C and he in turn had requested assistance from plaintiff to find a buyer under an arrangement whereby he and plaintiff would divide any fee that might be earned. No agreement had been made between Lawrence Swildens and defendants concerning the payment of any specific fee, defendants having only told him that they would accept $325,000.00 net for each vessel.

2.

In 1967 the M/V ALBERT C and M/V ANTHONY G were steel offshore supply vessels 129 feet in length by 30 feet in width.

3.

In January, 1967 plaintiff had an inquiry concerning the purchase of the vessels from Collins Submarine Pipeline, Ltd. of London, England. Negotiations commenced at that time and plaintiff was in direct touch with defendants concerning the possible sale of the vessels. Negotiations continued until April, 1967 at which time Collins Submarine Pipeline, Ltd. made an offer to purchase one vessel for $300,000.00 subject to an inspection. Defendants agreed to accept $300,000.00 net for one vessel. Plaintiff, in order to get a fee, first

made a counter-offer of $335,000.00 and when no reply was received then made a second counter-offer of $310,000.00. There was no reply to the reduced counter-offer and on May 5, 1967 plaintiff traced Collins Submarine Pipeline, Ltd. for the last time. Thereafter, there were no further communications between plaintiff and defendants.

4.

In August, 1967 one of defendants asked Lawrence Swildens what had come of the possible sale of one vessel to Collins Submarine Pipeline, Ltd. and he had been told then that the possible sale had fallen through probably because of the Arab-Israeli war.

5.

In the spring of 1968, Emmett Eymard, another vessel broker, approached defendants concerning the possible purchase of the M/V ANTHONY G and ALBERT C for resale to an undisclosed party. At this time one of the vessels was being lengthened from 129 feet to 141 feet and defendants had plans to lengthen the other vessel thereafter. Unknown to defendants, Collins Tex, a company related to Collins Submarine Pipeline, Ltd., had previously asked Emmett Eymard to find it two offshore supply vessels of a size of 140 feet to 150 feet in length with a beam of 30 feet. Emmett Eymard asked if they would be interested in the M/V ALBERT C and ANTHONY G and he was told that they would not be interested as those vessels were not long enough, being only 129 feet in length. Emmett Eymard learned after this conversation with Collins Tex that one vessel was being lengthened and that the defendants planned to lengthen the other one. Collins Tex, when it learned that these vessels were to be lengthened, became interested in the purchase of the vessels.

6.

In negotiations that took place in June, 1968, Emmett Eymard advised the defendants that he could not buy the vessels for resale, that he wished to act as broker and he disclosed the name of the interested purchaser to defendants. Emmett Eymard negotiated with Collins Tex in an effort to reach agreement but toward the latter part of June, 1968 Establishment Collins International, a company related to Collins Tex, requested to negotiate directly with defendants. This was done and agreement was reached. The vessels were sold to Establishment Collins International for a total of $650,000.00 on July 15, 1968.

CONCLUSIONS OF LAW

1.

There was a contract between plaintiff and defendants whereby defendants had authorized the plaintiff to obtain net dollars for them for the sale of the vessels with the implied understanding that plaintiff would retain any part of the purchase money in excess of the authorized net amounts. Plaintiff failed to effect a sale within the terms of the contract and is therefore not entitled to any commission. McLeod v. L & L Oil Company, 147 So.2d 241, 243 (La.App. 4th Cir. 1962); Latter & Blum v. Metropolitan Life Ins. Co., 208 La. 490, 23 So.2d 193 (1945).

2.

Plaintiff contended that because it had introduced Collins Submarine Pipeline, Ltd., a prospective purchaser, to defendants that it was entitled to a brokerage fee from the sale to Establishment Collins International, negotiated by defendants, more than one year later. A broker is not entitled to a fee when he has failed in an attempt to effect a sale made afterwards by the principal or another broker to the person or company to whom the broker tried and failed to sell the property. Ford v. Shaffer, 143 La. 635, 636, 79 So. 172 (1918); Lewis v. Manson, 132 La. 817, 61 So. 835 (1913); Hauch v. Bonnabel, 134 La. 847, 64 So. 795 (1914).

## 3.

■ Collins Submarine Pipeline, Ltd. and the related Collins companies had abandoned the idea of buying the M/V ALBERT C and M/V ANTHONY G in 1967 because the vessels were not of sufficient length to suit their needs. Collins' interest in the purchase of the vessels was renewed in 1968 only because the vessels were lengthened. The plaintiff was not responsible for Collins' renewal of interest in the purchase of the vessels and had nothing to do with bringing the buyer and seller together on common terms. Lewis v. Manson, *supra*; See also Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621 (1926); Junk v. Golden Ranch Sugar and Cattle Company, 122 La. 794, 48 So. 267 (1913); Ramsey v. Harry Bros. Co., 11 So.2d 256 (Ct.App.Orl. 1942); Fellman v. Ecuyer, 2 La.App. 398 (Ct.App.Orl.1925); Brennan v. Ansley, 3 Orleans App. 304 (1906).

## 4.

Judgment shall be entered in favor of defendants dismissing the complaint at plaintiff's cost.