### VIGUERIE v. MATHES

(February 25, 1929. Opinion and Decree.)

E. M. Stafford and Daniel Wendling, of New Orleans, attorneys for plaintiff, appellee.

Irving R. Saal, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. This is a suit by a real estate broker for a commission in the sum of $916.99. The defendant denied liability and reconvened, asking judgment for $128.20. There was judgment for plaintiff on the main demand, and for the defendant in reconvention, both as prayed for. The defendant, Mathes, has appealed, and the plaintiff Viguerie has answered the appeal, seeking to have the judgment in reconvention amended by reducing the amount allowed.

Both plaintiff and defendant are real estate agents, and at the time when the transaction, out of which this suit arose, occurred, the defendant Mathes was employed in the office of the plaintiff Viguerie. Mathes owned a certain piece of property on St. Charles Avenue, which he desired to sell and through Mr. Viguerie an offer was obtained from a Mr. Hugh Ritchie, under date of July 19, 1923, by the terms of which Ritchie agreed to purchase the property for $30,566.64, cash, the sale to be consummated within forty-five days. Mathes accepted this offer and Viguerie accepted Ritchie's note for $3,000.00 in lieu of a cash deposit. The property was not conveyed to Ritchie until December 11, 1923, the consideration then being $31,175.00, of which $11,175.00, maturing ninety days from date and secured by a second mortgage on the property conveyed, the first mortgage being held by a homestead company, which had loaned Ritchie $20,000.00 in order to make the cash payment, as well as by certain junior mortgages on other property owned by Ritchie.

It is defendant's contention that the sale finally consummated, though made to the party introduced by plaintiff, was a separate and distinct transaction, upon different terms and consummated after the abandonment of the original agreement to buy and sell, of which plaintiff had been, the procuring cause.

The case is said to be controlled by the rule announced in Newman vs. American Liberty Bank & Trust Company, 163 La. 817, 112 So. 732, to the effect that:

"Broker who brought together representatives of banks in negotiations for merger held not the efficient or procuring cause of final merger and so not entitled to compensation for services; one of the

banks having finally and decisively rejected the proposition and there having been no renewal of negotiations with the broker by such bank."

And in Leo Fellman vs. Ecuyer et al., 2 La. App. 398, where this Court held:

"A real estate agent is not entitled to a commission upon a lease confected by an owner dealing directly with the lessee, though the lessee was originally solicited by the agent and introduced by the agent to the owner, where it appears that the owner did not interfere with the agent in his effort to consummate the lease, and the agent voluntarily abandoned negotiations and left the city on his vacation."

See also Wittenberg vs. McGrath, 3 La. 244; Bullis & Thomas vs. Calvert, 162 La. 378, 110 So. 621; Freeman vs. Torre, 157 La. 1093, 103 So. 334, and Lewis vs. Manson, 3 La. 817.

There can be no doubt that the law is as stated by counsel and as expounded in the authorities cited.

The general rule is that in order for an agent to recover his commission he must obtain a purchaser, able and willing to execute the terms of his agreement, and that an owner has a right to limit the time in which the transaction is to be consummated, and to terminate the broker's authority at the expiration of the time limit.

It is also true that "a broker who has failed to effect a sale within the time and upon the terms fixed, is not entitled to a commission upon the sale made afterwards by the owner to the purchaser originally procured by the broker, when the purchaser had abandoned all idea of purchasing from the broker and the sale was the result of new negotiations between the owner and purchaser or persons representing them." McWilliams vs. Soule, No. 8455, Orleans Appeal.

On the other hand it is equally well settled that an owner cannot avail himself of the services of a broker, who has been the procuring cause of an agreement to purchase his property, by continuing the negotiations beyond the time allowed the broker and finally consummating the sale upon somewhat different terms than those mentioned in the original offer obtained by the broker, without compensating the broker. In Gottschalf vs. Jennings, 1 La. Ann. 5, it was held:

"After he (the plaintiff) had thus rendered services which eventually enured to the advantage of the defendants they could not deprive him of all compensation by withdrawing the plan from his hands, discharging him, and consummating the negotiations through other agents."

In Harvey vs. Winters, 1 La. App. 383, this Court held:

"In order to earn his commission a real estate agent, as a rule must procure a purchaser within the time fixed in the contract. But if the owner continues the negotiations with the prospective buyer uninterruptedly after the expiration of the time fixed, and within a few days thereafter, sells the property to the purchaser procured by the agent, he will owe the agent his commission."

It is true that in this case the sale was consummated within a few days but the principle is the same, since the determining factor is the finality of the unsuccessful effort of the broker to perform his undertaking.

See also Walsh vs Grant, — Mass. —, 152 N. E. 884, 47 A. L. R. 855 (Editor's note at bottom of page).

The question for consideration here is whether the original contract for the purchase of defendant's property had been abandoned as defendant contends or whether it had only been amended as a result of negotiations between the owner and

the purchaser, continuing beyond the forty-five day period mentioned in the contract.

Ritchie, the purchaser obtained by plaintiff, according to his admission, was unable to pay for the property, upon the terms agreed upon, that is to say, in cash. This fact is pointed to, as establishing the failure of the original agreement by which Ritchie undertook to buy the property. Viguerie's efforts to sell the property, it is claimed, proved abortive. The defendant Mathes, testifying in his own behalf, was not convincing. He was evasive, and in some instances contradictory. His evidence was marked by the apparent absence of candor, which at frequent intervals caused the trial judge to interfere in an effort to clarify his hesitant and confusing testimony.

Three witnesses testified that Mathes was present when the note for $3,000.00 was signed by Ritchie, but Mathes, when reminded of this evidence and asked if he was present, replied that he did not believe he was there and to the best of his knowledge he was not present when the note was signed. Neither court nor counsel could succeed in getting an intelligent explanation of the reason for the difference between the price mentioned in the original agreement procured by plaintiff and that ultimately mentioned as consideration in the act of sale whereby the property was conveyed.

It was only with the assistance of his counsel, who testified in the case that the court was ultimately informed of the details of the transaction. Mr. Saal, defendant's counsel, explained that Mathes came to him when Ritchie had failed to take the property, and that after a series of negotiations with Ritchie he was able to reach an agreement whereby the cash payment was reduced to $20,000.00, and

there was added to the original amount offered by Ritchie $30,566.64, the sum f $500.00 as a bonus to cover Mr. Saal's fee, and an amount equal to the interest on the original purchase price, from the time of the default to the time the act of sale was passed. In other words the final consideration was equal to the original sum offered by Ritchie, plus $500.00, attorneys' fees, and plus interest on the entire amount, a total of $608.56, more than the price Ritchie originally agreed to pay for the property.

It is insisted that these changes in the original agreement to buy and sell amounted to the confection of a new agreement which was entered into only after the collapse of the original contract of which plaintiff was the procuring cause. The terms are different, it is said, and the price is different. There was only $20,000.00 paid in cash, the argument proceeds, whereas in the original offer the entire consideration was to be cash. The balance of the purchase price was secured by a second mortgage on the property conveyed, as well as by junior mortgages, on other property owned by Ritchie, a provision not present in the original agreement. The price was $608.36 in excess of the offered price. No commission is due Viguerie, since he had nothing to do with the final negotiations leading up to the act of sale.

But plaintiff was not advised that defendant considered the original agreement at an end, and, he was allowed to retain Ritchie's note for $3,000.00 until the act of sale was ultimately passed. An employee of plaintiff's had, at defendant's request, appraised the properties, upon which the junior mortgages were to be given, with a view of determining the equity of the purchaser, and both plaintiff and his employee testified that he, defend-

ant Mathes, acknowledged his obligation to Viguerie for the commission and asked for time to pay it. There was no break in the negotiations between Mathes and Ritchie. Ritchie testified that he was not aware of any and Mathes' conduct did not indicate intentional interruption. It is true that the negotiations were prolonged for several months while an effort to modify the terms in a manner consistent with Ritchie's financial capacity was being made. But, when finally agreed upon the original offer of Ritchie was the basis of the sale, with interest and attorneys' fees added. If the sale was a new transaction, why hold on to Ritchie's note for the deposit, and why adopt the original offer as a basis of the final consideration, and why tell Viguerie that his commission would be paid when the second mortgage was paid? Mathes denies that he made this promise, but, as we have said, he is not convincing.

Under the circumstances we are of the opinion that the plaintiff Viguerie was the procuring cause of the sale and is entitled to his commission. The fact that there was some difference between the original offer procured by plaintiff, and that afterwards accepted by the defendant, is immaterial since the basis of the final transaction, by which this property was sold, was the original offer made by Ritchie and procured by plaintiff.

Concerning the reconventional demand and the criticism which counsel makes of the effort to amend the judgment, in this respect, without a formal appeal having been prosecuted by the plaintiff, it is sufficient to say, that we believe the judgment to be correct, and there is, therefore, no necessity of considering the proper method of amending it.

For the reasons assigned the judgment appealed from is affirmed.